**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                               :
NATIONAL GRANGE MUTUAL                         :
INSURANCE COMPANY                              :
                                               :
              Plaintiff,                       :
        v.                                     :        CIVIL ACTION NO. 07-1234 (JAP)
                                               :
RAYMOND A. STULB, et al.                       :
                                               :        **OPINION**
              Defendants.                      :
_____:

PISANO, District Judge.

Presently before the Court are motions for summary judgment brought by Plaintiff

National Grange Mutual Insurance Company ("National Grange") and Defendant One Beacon

Insurance Company ("One Beacon").  Defendant Raymond A. Stulb ("Stulb") opposes National

Grange's motion, and National Grange opposes One Beacon's motion.  For the reasons set forth

herein, the Court grants the motion for summary judgment brought by National Grange and

denies the motion for summary judgment brought by One Beacon.

## I.    BACKGROUND

### A.    The Automobile Insurance Policy in Dispute

On March 14, 2007, National Grange brought this declaratory judgment action seeking an

adjudication of its obligations, under a commercial automobile insurance policy, to defend and

indemnify Stulb.  The crux of National Grange's allegations is that it has no obligations to defend

or indemnify Stulb because he misrepresented in his application for insurance that he resided,

and would garage his insured vehicle, in Vermont, although he actually resided, and garaged his insured vehicle, in New Jersey for the duration of the policy's coverage period.

National Grange is an insurance company licensed to sell automobile insurance in Vermont.  (Susan Emerson Affidavit March 14, 2008 ("Emerson Aff.") ¶¶ 5-6).  On May 9, 1998, Stulb applied for commercial automobile insurance from National Grange through Vermont Insurance a/k/a Barber & Jarvis ("Barber & Jarvis"), an independent insurance broker in Vermont.  (Emerson Aff. ¶ 9, Ex. A).  That application sought coverage of Stulb's 1995 Dodge Ram truck, which was registered in Vermont.  (Emerson Aff. Ex. A).  Stulb represented in his application for insurance that his mailing address and "Premises Information" was P.O. Box 374 West Dover, Vermont, and that he was a "tenant" at a residence in Windham, Vermont. (Emerson Aff. ¶ 10, Ex. A).  He also provided evidence of a Vermont driver's license.  Stulb further indicated that he would drive the insured vehicle within a 100-mile radius of West Dover, Vermont for the purpose of conducting his carpentry business.  (Emerson Aff. Ex. A at 3).

Based on that application, National Grange issued Stulb four consecutive annual insurance policies covering the periods of May 29, 1999 to May 29, 2000, May 29, 2000 to May 29, 2001, May 29, 2001 to May 29, 2002, and May 29, 2002 to May 29, 2003.[1]  (Emerson Aff. ¶ 15).  At issue here is policy number B1K37367 which covered the period of May 29, 2002 through May 29, 2003.  (Emerson Aff. ¶ 13); (Patricia M. McDonagh Certification March 24, 2008 ("McDonagh Certif.") Ex. G).  All policies issued by National Grange listed Stulb's address as being the Vermont post office box set forth in Stulb's application.  (McDonagh Certif. Ex. G).

---

[1] In its moving submissions, National Grange incorrectly states that the relevant policies are effective on May 28 of the applicable year.  A review of the declarations pages in the policies, however, indicates that the effective date is May 29.

The insurance agreements imposed on National Grange a duty to indemnify Stulb for damages legally imposed due to bodily injury or property damage caused by an automobile accident involving the covered vehicle.  (McDonagh Certif. Ex. G).  In addition, pursuant to the policies, National Grange is obligated to defend Stulb against a suit seeking such damages that are covered under the policy.  (McDonagh Certif. Ex. G).

In relevant part, policy number B1K37367 included Endorsement IL 01 70 04 98, governing Concealment, Misrepresentations or Fraud.  (McDonagh Certif. Ex. G).  That endorsement provides that National Grange "will not pay for any loss or damage in any case of: 1.  Concealment or misrepresentation of a material fact; or 2.  Fraud; committed by [the policy-holder] at any time and relating to coverage under this policy."  (McDonagh Certif. Ex. G).  The application of this Endorsement is in dispute here.

### B.      The Underlying Claim for Coverage

On September 23, 2002, Stulb drove the insured Dodge truck on a highway in Colts Neck, New Jersey.  The tire of the truck disengaged and struck a vehicle driven by Defendants Lance and Viviane Greenberg ("Greenbergs").  (Raymond A. Stulb Affidavit April 2, 2008 ("Stulb Aff.") ¶ 12); (McDonagh Certif. Ex. H, I).  Significantly, the police report drafted after the accident provides Stulb's address as being located in Wall, New Jersey and states that Stulb has a New Jersey driver's license.  (McDonagh Certif. Ex. H).

Due to that accident, the Greenbergs, either on October 2, 2002 or October 4, 2002, reported a loss claim to National Grange.  (McDonagh Certif. Ex. O, P).  Stulb avers that, the day after the car accident, he obtained a new truck and notified Barber & Jarvis of both the accident and the new truck.  (Stulb Aff. ¶¶ 13-14).  According to Stulb, an agent at Barber & Jarvis

informed him that the new truck will replace the 1995 Dodge truck under the terms of the existing insurance policy.  (Stulb Aff. ¶ 14).  Moreover, Stulb submits that he informed the Barber & Jarvis agent that he did not reside in Vermont, but rather resided in New Jersey, and that the agent did not raise any concerns regarding Stulb's coverage based on that fact.  (Stulb Aff. ¶ 14-15).

According to National Grange's claim file, however, Stulb did not report the September 23, 2002 car accident to National Grange, but to Barber & Jarvis.  (McDonagh Certif. Ex. P).  Rather, upon notification of the accident by Mr. Greenberg, an agent of National Grange attempted to contact Stulb but did not have a valid phone number at which to reach the insured.  (McDonagh Certif. Ex. P).  On October 4, 2002, the National Grange agent contacted someone at Barber & Jarvis, who stated that Stulb had reported the accident to them on September 25, 2002.  The Barber & Jarvis employee also informed the National Grange agent that it was her belief that Stulb might reside in New Jersey, not in Vermont; Barber & Jarvis had a Wall, New Jersey address on file for Stulb, who had stated that he was in New Jersey "for a few months for a family emergency."  Indeed, in 2001, Barber & Jarvis sent an insurance renewal notice to Stulb at this New Jersey address.  (McDonagh Certif. Ex. P).

On October 9, 2002, a National Grange agent spoke with Stulb regarding the September accident.  (McDonagh Certif. Ex. P).  According to the agent's notes, Stulb stated that he "stayed" with a friend in West Dover, New Jersey, that his wife resides in Wall, New Jersey, and that, although he does a lot of interstate traveling, he considers Vermont to be his residence.  (McDonagh Certif. Ex. P).  The following day, on October 10, 2002, National Grange sent Stulb a Non-Waiver Agreement form indicating that it sought to investigate the principal place of

garaging the 1995 Dodge truck.  (McDonagh Certif. Ex. Q).  Stulb did not execute or otherwise
respond to this Agreement.  (Complaint ¶ 20).  On December 30, 2003, National Grange, having
received no further communication in respect of the underlying accident or a claim of loss from
Stulb, closed its claim file on this matter.  (Complaint ¶ 22).

On April 12, 2004, the Greenbergs filed a complaint in the Superior Court of New Jersey,
Monmouth County, against Stulb, raising various negligence claims arising from the car
accident.  *Greenberg v. Stulb*, No. MON-L-1704-04 (N.J. Super. Ct., Law Div. April 12, 2004);
(McDonagh Certif. Ex. I).  On June 11, 2004, Stulb's attorney, via a letter, made a demand to
National Grange for coverage under the terms of Stulb's automobile policy.  (McDonagh Certif.
Ex. L, attachment "F").  Pursuant to a letter dated June 14, 2004, National Grange, through its
parent company Main Street America Group, informed Stulb that it refused to provide him with
defense or indemnification in the state action brought by the Greenbergs.  (McDonagh Certif. Ex.
J).  National Grange stated that it denied coverage under the 2002-2003 policy due to Stulb's
"lack of cooperation" in failing to provide a statement of loss.  (McDonagh Certif. Ex. J).
Moreover, the insurer reasoned that it appeared that, "at the time of the loss[, Stulb] w[as] not
residing at the address listed on the policy."  (McDonagh Certif. Ex. J).  On July 26, 2004,
Stulb's attorney responded to National Grange, contesting it's disclaimer of coverage.
(McDonagh Certif. Ex. L, attachment "I").  Attached to that letter, the attorney forwarded a copy
of the policy report, which identified Stulb's address as being located in Wall, New Jersey and
noted that Stulb had a New Jersey driver's license.

In a letter dated August 27, 2004, National Grange informed Stulb's attorney that it
reaffirmed its decision to disclaim coverage for the September 23, 2002 accident with the

Greenbergs.  (McDonagh Certif. Ex. K).  According to that letter, Stulb had refused to sign the
Non-Waiver Agreement or to otherwise cooperate with National Grange in resolving the issue of
Stulb's residence.  Based upon a review of the police report drafted in connection with the
underlying car accident, National Grange concluded that Stulb resided in New Jersey at the time
of loss.  National Grange informed Stulb's attorney that it had issued Stulb a policy in Vermont
"with the understanding that the vehicle was to be garaged in Vermont."  (McDonagh Certif. Ex.
K).  National Grange, thus, determined that Stulb had "misrepresented where [h]is vehicle would
be garaged and voided his policy."  (McDonagh Certif. Ex. K).

     **C.**    **Procedural History**

     On March 14, 2007, National Grange filed a declaratory judgment complaint, pursuant to
28 U.S.C. § 2201, against Stulb, the Greenbergs, and One Beacon, the Greenbergs' insurance-
provider.  National Grange seeks the Court to declare the 2002-2003 insurance policy void *ab
initio* because Stulb knowingly made misrepresentations of material facts as to his residence and
the location of the garaging of the insured truck.  Accordingly, National Grange seeks to invoke
the terms of Endorsement IL 01 70 04 98 to have the Court declare that National Grange need not
defend or indemnify Stulb in respect of the state claims brought against him by the Greenbergs.
In addition, National Grange claims that it does not have a duty to defend or indemnify Stulb
because of Stulb's failure to cooperate with National Grange's investigation of the car accident.

     On May 14, 2007, One Beacon, as the Greenberg's uninsured and under-insured motorist
insurance-provider, filed its Answer and asserted two Counterclaims.  First, One Beacon seeks a
declaration that National Grange is obligated to provide full indemnity coverage under Stulb's
2002-2003 policy.  Second, One Beacon seeks a declaration that the Greenbergs are not entitled

to uninsured motorist benefits under the policy issued by One Beacon because National Grange's "erroneous" disclaimer of coverage improperly triggered a claim for uninsured motorist insurance coverage by the Greenbergs.

Presently, National Grange moves for summary judgment in its favor and for a declaratory judgment that it has no obligation to defend or indemnify Stulb against the claims brought by the Greenbergs. National Grange also requests the Court to dismiss One Beacon's Counterclaims. National Grange argues that, under Vermont law, Stulb's misrepresentation as to the location at which his truck would be principally garaged voids the automobile policy. Stulb opposes the motion, arguing that the Court should apply New Jersey law to find that National Grange knew that the insured vehicle was kept in New Jersey and, thereby, waived, or is estopped from asserting, a right to void the agreement.

Also before the Court is One Beacon's motion for summary judgment. One Beacon argues that National Grange is estopped from denying coverage to Stulb. One Beacon submits that National Grange did not suffer prejudice by any non-cooperation on the part of Stulb and took an unreasonable amount of time investigate and disclaim coverage for the Greenbergs' claim. National Grange opposes One Beacon's motion. National Grange responds that One Beacon does not have standing to raise an estoppel argument in respect of National Grange's disclaimer of coverage. Moreover, National Grange submits that, even if One Beacon has standing to assert such an argument, National Grange is not estopped because it did everything necessary to complete its investigation and timely disclaimed coverage.

## II.    DISCUSSION

### A.    Standard of Review under Federal Rule of Civil Procedure 56(c)

A court shall grant summary judgment under Federal Rule of Civil Procedure 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are critical or "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine fact issue compels a trial. *Id.* at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial. *Anderson*, *supra*, 477 U.S. at 249. If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

**B.    Analysis**

**1.    *Vermont Law Applies***

-8-

As a threshold matter, the Court must determine whether Vermont or New Jersey law applies to the issues presented.  Significantly, the insurance policy did not contain a choice-of-law clause.  Both National Grange and One Beacon submit that Vermont law applies.  However, Stulb argues, in opposition to National Grange's motion for summary judgment, that New Jersey law must apply.  For the following reasons, the Court concludes that Vermont law is applicable.

To determine which state's law applies in a declaratory judgment action, a federal court must apply the choice of law rules of the forum state, which is New Jersey.  *Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 131 (3d Cir. 2002) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)).  In respect of insurance disputes, the Supreme Court of New Jersey has held that "the law of the place of the contract will govern the determination of the rights and liabilities of the parties under the insurance policy."  *State Farm Mut. Auto. Ins. Co. v. Simmons' Estate*, 84 N.J. 28, 37 (1980).  "This rule is to be applied unless the dominant and significant relationship of another state to the parties and the underlying issue dictates that the basic rule should yield."  *Ibid.*  To make that determination, "courts should rely on the factors and contacts set forth in *Restatement* sections 6 and 188."  *Gilbert Spruance Co. v. Penn. Mfrs. Ass'n Ins. Co.*, 134 N.J. 96, 102 (1993).  In addition, when a casualty-insurance contract is in issue, courts should also consider *Restatement* section 193.  *Id.* at 103.

Section 188 of the *Restatement* lists "contacts"—"such as the domicile, residence, nationality, place of incorporation and place of business of the parties, and the places of contracting and performance"—relevant to an analysis under section 6.  *Ibid.*  Section 6, then, provides "general considerations germane to a court's conflict-of-law analysis."  *Ibid.* (internal quotation marks omitted).  Finally, section 193 provides that "the court should apply the law of

the state that the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in [section] 6 to the transaction and the parties." *Ibid.* (internal quotation and editing marks omitted).

The sum consideration of these factors under the *Restatement* results in a "flexible governmental interest analysis." *Aetna Sur. and Cas. Co. v. Sacchetti*, 956 F. Supp. 1163, 1168 (D.N.J. 1996); *Rowe v. Hoffman-La Roche, Inc.*, 189 N.J. 615, 621 (2007) (applying similar analysis in tort action). Essentially, a court must identify interested states, determine if a conflict in the law of those interested states exists, and, if so, "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." *Aetna Sur.*, *supra*, 956 F. Supp. at 1168 (internal quotation marks omitted).

Applying that analysis here, the Court finds that Vermont law must govern the issues presented. Assuming a conflict of law exists between Vermont substantive law and New Jersey substantive law,[2] Vermont clearly has the strongest interest in this case. The Court focuses on

---

[2] The existence of an actual conflict is the first step in a choice-of-law analysis, and the absence of a conflict renders the choice-of-law question "inconsequential." *Rowe*, *supra*, 189 N.J. at 621. National Grange, in its motion, points out that New Jersey law precludes the retroactive revocation of an automobile liability policy covering vehicles registered in New Jersey for misrepresentations after the insured becomes liable to an innocent third party. *N.J. Mfrs. Ins. Co. v. Varjabedian*, 391 N.J. Super. 253, 256-57 (App. Div. 2007); N.J.S.A. 39:6-48(a). Rather, an insurer must provide the minimal level of coverage provided for in N.J.S.A. 39:6A-3. Although this rule likely would not be applicable to this case where the insured vehicle is registered in Vermont, the Court notes that Vermont does not have a corresponding rule precluding an insurer from voiding a policy in certain instances. In addition, the Court notes that a conflict in law may exist between the two states in respect of an insurer's obligation to refund premium payments made by an insured. *Compare* N.J.S.A. 17:29C-4.1, *with Green Mountain Ins. Co. v. Me. Bonding & Cas. Co.*, 608 A.2d 1160, 1165-66 (Vt. 1992). Thus, a conflict may

section 193 of the *Restatement* which mandates the application of the law of the state which the parties understood to be the principal location of the insured risk during the term of the policy. The record indicates that the parties understood Vermont to be the principal location of the insured risk; thus, section 193 requires the application of Vermont law.

Moreover, New Jersey does not have a significant and dominant relationship with the transaction or parties such that New Jersey law, rather than Vermont law, should apply.  Stulb argues that New Jersey has a more significant relationship to the insurance policy because, according to him, National Grange insured Stulb's vehicle knowing that it was garaged in New Jersey.  However, the facts presented indicate that National Grange believed Vermont to be the location of the insured risk and did not know that Stulb actually resided in New Jersey.  The record shows that Stulb applied for insurance coverage of a Vermont-registered vehicle, using a Vermont address, at a Vermont insurance agency, and secured the insurance from a company licensed to sell insurance in Vermont, but not New Jersey.  Considering the contacts set forth in section 188 of the *Restatement*, as well as the considerations set forth in section 6, the Court holds that Vermont law must govern this case as Vermont is the state which the parties believed would be the principal place of the risk and is the state with the most significant relationship to the transaction and parties.  Accordingly, the Court applies Vermont substantive law to the motions considered herein.

### 2.    *National Grange's Motion*

On its motion for summary judgment, National Grange seeks the Court to declare that Stulb's 2002-2003 automobile insurance policy is void *ab initio* because Stulb knowingly made

exist between these two states' substantive law on the issues presented here.

multiple misrepresentations of material facts.  National Grange submits that Stulb misrepresented in his application for insurance that: (1) the insured vehicle would be principally garaged in Vermont; (2) the insured vehicle would be driven within a local 100 mile radius of the West Dover city limits; (3) Stulb received mail at a post office box in West Dover, Vermont; (4) Stulb lives as a tenant in Windham, Vermont; and (5) the insured vehicle was used to conduct Stulb's carpentry business in Vermont.  National Grange argues that these misrepresentations were material to National Grange's decision to issue the automobile insurance to Stulb and that it reasonably relied upon Stulb's representations made in his application.

Stulb opposes the motion.  He contends that genuine issues of material fact exist as to whether National Grange relied on Stulb's alleged misrepresentations.  Moreover, Stulb asserts that National Grange waived its right to void the agreement or, alternatively, is estopped from voiding the agreement because it accepted, and has not returned, Stulb's insurance premiums after learning of Stulb's misrepresentations.

Under Vermont law, a court must construe an insurance contract "according to its terms and the evident intent of the parties as expressed in the policy language."  *Smith v. Nationwide Mut. Ins. Co.*, 830 A.2d 108, 113 (Vt. 2003) (internal quotation marks omitted).  Consistent with Endorsement IL 01 70 04 98 to National Grange's policy, Vermont law provides that material or fraudulent misrepresentations in applications for automobile liability insurance are grounds for declaring the policy void *ab initio*.  *Fireman's Fund Ins. Co. v. Knutsen*, 324 A.2d 223, 227 (Vt. 1974).  However, a misrepresentation does not void a liability insurance policy "unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by [the] insurer."  8 V.S.A. § 4205.  Further, an

automobile insurer "has no duty to investigate another's representation, but may rely on its truth." *Knutsen*, *supra*, 324 A.2d at 229 (citing *Fenwick v. Sullivan*, 145 A. 258 (Vt. 1929)).

Vermont law, thus, voids a policy if an insured makes a *material* misrepresentation, irrespective of whether the insured innocently made the misrepresentation. *McAllister v. AVEMCO Ins. Co.*, 528 A.2d 758, 112 (Vt. 1987); *accord Knutsen*, *supra*, 324 A.2d at 230 ("Innocent material misrepresentations will have the same affect as fraud in rendering the policy voidable."). Accordingly, "[w]hether or not the insurer can void the policy in this case depends on the materiality of the misrepresentation." *Ibid.* Materiality under 8 V.S.A. § 4205 is determined by focusing "on the nexus between the false statement and the insurer's decision to issue a policy, not between the false statement and the ultimate loss." *Ibid.*

As a threshold matter, the Court finds that no dispute exists as to whether Stulb made misrepresentations in his application for commercial automobile liability insurance. No party disputes that Stulb misrepresented that: (1) he resided in Vermont; (2) he received mail in Vermont; (3) he would garage the insured truck principally in Vermont; and (4) he would drive the insured truck within 100 miles of the West Dover city limits. At his deposition, Stulb testified that he never permanently resided in Vermont. (McDonagh Certif. Ex. B at 25:5-7, 40:1-4). Rather, Stulb obtained a Vermont driver's license and registered the insured vehicle in Vermont because he *contemplated* moving to Vermont, but never moved there. (McDonagh Certif. Ex. B at 51:13-20, 58:5-8). Stulb secured a post office box in West Dover, Vermont for the purpose of obtaining the Vermont driver's license. (McDonagh Certif. Ex. B at 54:22-55:6). Once Stulb decided not to move to Vermont, which occurred at some point before 2000, he continued to keep the Vermont post office box because "[i]t was free of charge[.]" (McDonagh

-13-

Certif. Ex. B at 55:16-56:14).  Despite having the Vermont post office box, Stulb had the mail

sent to that box forwarded to him at a New Jersey address.  (McDonagh Certif. Ex. B at 57:6-15).

In addition, Stulb never worked in Vermont, with the exception of aiding a friend in a small

construction project in Mount Snow, Vermont.  (McDonagh Certif. Ex. B at 38-39).  Thus,

although Stulb represented otherwise, he never resided in Vermont, received mail in Vermont,

garaged the insured truck in Vermont, or drove the vehicle in a confined 100-mile radius of West

Dover, Vermont.

   Having determined that Stulb made misrepresentations in his application for automobile

insurance, the issue becomes whether these misrepresentations were material to National

Grange's decision to issue the insurance policy to Stulb.  The Court finds that Stulb's

misrepresentations are material because his false statements in the application influenced

National Grange's decision to assume the risk of insuring Stulb's vehicle.  *McAllister*, *supra*, 528

A.2d at 111 (finding insured's misrepresentation that insured aircraft had been inspected

influenced insurer's decision to issue a policy and, thereby, was material under 8 V.S.A. § 4205).

   Stulb's misrepresentations in his application for insurance formed the basis for National

Grange's decision to insure Stulb's vehicle.  Indeed, an underwriter employed by National

Grange avers that, to decide whether to issue an automobile insurance policy, National Grange

considers: (1) the year, make, and model of the insured vehicle; (2) "the location of the insured

risk, which is the where the insured vehicle will be garaged for the majority of the year;" (3) the

place of residence of the insured; (4) the nature of the use of the insured vehicle; (5) the expected

radius in which the insured vehicle will be operated; (6) the insured's accident loss and

automobile insurance history; and (7) the insured's driving records.  (Emerson Aff. ¶ 8).

National Grange receives this information from the insurance applications and, thus, relies on the application, as well as a Motor Vehicle Report from the state's department of motor vehicles, to make its determination.  (Emerson Aff. ¶ 11).  Pursuant to policy, National grange considered the seven factors listed above as derived from Stulb's application to determine whether to assume the risk of insuring Stulb's truck.  Stulb's multiple misrepresentations as to those seven factors are "material" within the meaning of 8 V.S.A. § 4205.

Moreover, National Grange and its parent company are licensed to sell automobile insurance in Vermont, but not in New Jersey.  (Emerson Aff. ¶¶ 5-6).  Had Stulb correctly represented in his application that he resided in New Jersey and that the insured vehicle would be garaged in New Jersey, National Grange would not have issued the policy in dispute because National Grange does not have authority to sell insurance in New Jersey.  *See* N.J.S.A. 17:17-12 (providing that any person engaged in transaction of insurance business without authorization pursuant to N.J.S.A. 17:17-1 *et seq.* and, for foreign entities, 17:32-1 *et seq.* shall be guilty of a misdemeanor offense).  Therefore, the Court concludes that Stulb's misrepresentations in his application for insurance from National Grange were material to National Grange's determination to issue an insurance policy to Stulb.  Accordingly, there is no dispute of material fact that, pursuant to Endorsement IL 01 70 04 98 and 8 V.S.A. § 4205, Stulb's insurance policy numbered B1K37367, covering the period of May 29, 2002 through May 29, 2003, is void *ab initio*.

Next, the Court must consider Stulb's argument that National Grange waived its right to assert, or is estopped from asserting, that the policy is void.  According to Stulb, National Grange waived its right to claim that the insurance policy is void because National Grange, after

-15-

discovering in October, 2002 that Stulb resided in New Jersey rather than Vermont, did not cancel the 2002-2003 policy and return the premium Stulb paid in exchange for that policy. Stulb bases his estoppel argument on the same rationale and adds that he relied to his detriment on the belief that he had valid insurance through May 29, 2003.

In insurance law, Vermont courts often use interchangeably the doctrines of waiver and equitable estoppel, although they have different elements. *Merit Behavioral Care Corp. v. State Indep. Panel of Mental Health Providers*, 845 A.2d 359, 364 (Vt. 2004) (citing *Liberty Mut. Ins. Co. v. Cleveland*, 241 A.2d 60, 63 (Vt. 1968)).   To establish waiver under Vermont law, "the record must demonstrate an intentional relinquishment of a known right on the part of the" insured. *Knutsen*, *supra*, 324 A.2d at 230.  "Thus, if the insurance company knew, or should have known of the misrepresented facts, and by its conduct evidenced an intent to retain [Stulb] as an insurance risk, it may be held to have waived its right to void the policy." *Ibid.*  In such an instance, "[c]onstructive knowledge may be imputed where the company has in its possession such facts as would put a prudent person on further inquiry which would disclose the misrepresented information." *Ibid.*  The doctrine of waiver thus involves knowledge and intent. *Liberty Mut. Ins.*, *supra*, 241 A.2d at 63.  In contrast, the doctrine of "estoppel involves the act or conduct of both parties to the contract" and requires a showing that "one has been misled to his prejudice or into an altered position." *Ibid.*

Accordingly, in order for Stulb to assert that National Grange waived its right to void the policy, Stulb must show that National Grange had actual or constructive knowledge that Stulb made material misrepresentations in his insurance application *and* conducted itself in a manner that evinces an intent not to void Stulb's policy.  Similarly, in order to assert that National

Grange is estopped from voiding the policy, Stulb must show that National Grange's conduct misled Stulb to his prejudice.

To support the knowledge element of waiver, Stulb avers in his affidavit that he told Barber & Jarvis, in 2000, that he lived and garaged the insured vehicle in New Jersey and, thereby, Barber & Jarvis, as an alleged "agent" of National Grange, had actual knowledge of Stulb's misrepresentations as early as one year prior to the accident. (Stulb Aff. ¶¶ 9-10). Stulb further affirms that, in October 2002, he informed National Grange that he lived and garaged the insured vehicle in New Jersey. In addition, to show that National Grange conducted itself in manner evincing an intent not to void the policy, Stulb submits that National Grange's failure to return the premium payments made on the 2002-2003 policy upon learning of Stulb's misrepresentations require a finding of waiver and estoppel. Finally, Stulb argues that he relied to his detriment on the belief that his 2002-2003 policy with National Grange was effective.

Although Stulb presently makes these assertions to create an issue of material fact as to when National Grange knew of Stulb's misrepresentations, the Court recognizes that these statements substantially contradict Stulb's prior deposition testimony. It has been held that "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004). *Accord Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 577-78 (2d Cir. 1969). Under the "sham affidavit" doctrine, district courts disregard "an offsetting affidavit that is submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony." *Baer*, *supra*, 392 F.3d at 624 (internal quotation marks omitted). Thus, "[w]hen a party does not

explain the contradiction between the subsequent affidavit and the prior deposition, the alleged

factual issue in dispute can be perceived as a 'sham,' thereby not creating an impediment to a

grant of summary judgment based on the deposition." *Ibid.* However, "corroborating evidence

as to the substance of a later certification [may] ameliorate[] the concerns" of the sham affidavit

doctrine. *Id.* at 625.

Here, Stulb's affidavit, submitted to oppose National Grange's motion, contradicts his

former deposition testimony. Although Stulb now avers that he informed both National Grange

and Barber & Jarvis, by October 2002, that he lived and garaged his vehicle in New Jersey,

(Stulb Aff. ¶ 10), he formerly testified at his deposition that he did not recall telling either

company where he lived at the time of the accident, (Emerson Aff. Ex. B at 82:3-15, 101:3-13).

In contrast to his present averments, Stulb stated at his deposition that he told someone at either

National Grange or Barber & Jarvis that, around the time of the car accident, he lived at a hotel in

Vermont. (Emerson Aff. Ex. B at 82:16-24).

Moreover, Stulb offers no explanation for the discrepancies between his affidavit and his

deposition testimony and fails to proffer any corroborating evidence as to the statements he

makes in the affidavit. Rather, the record supports Stulb's prior deposition testimony. National

Grange's claim records contradict Stulb's present assertion that he informed National Grange or

Barber & Jarvis that he resided and garaged his vehicle in New Jersey. According to National

Grange's notes, Barber & Jarvis believed Stulb went to New Jersey temporarily for a family

emergency, but permanently resided in Vermont. (McDonagh Certif. Ex. P). Because Stulb's

affidavit contradicts his former sworn deposition testimony and the substance of his statements

are not corroborated, the Court disregards Stulb's affidavit proffered in opposition to National

Grange's motion for summary judgment under the sham affidavit doctrine.

Disregarding Stulb's affidavit, the Court considers the remainder of the record to determine whether National Grange waived its right to void, or is estopped from voiding, the policy.  Reviewing the record in the light most favorable to Stulb, the Court finds that National Grange had neither actual nor constructive knowledge of Stulb's misrepresentations until it received the police report of Stulb's accident with the Greenbergs in July of 2004.  Prior to that, National Grange's claim records reveal that it attempted to investigate Stulb's place of residence and place of garaging by sending a Non-Waiver form to Stulb, who never responded.  When National Grange questioned Stulb himself on October 9, 2002 as to where he resided, Stulb responded that, although he travels a lot, he considers Vermont to be his place of residence.  In addition, National Grange's queries to Barber & Jarvis did not reveal whether Stulb resided and garaged the vehicle in New Jersey or in Vermont.  According to National Grange's records, an agent at Barber & Jarvis represented that the company did not know where the insured lived. Moreover, although Barber & Jarvis did have a New Jersey address on file for Stulb, they used that address in the belief that Stulb went temporarily to New Jersey for a family emergency or for family business.  Although National Grange's inquiries made around the time of the September 2002 accident put the insurer on notice that Stulb might have misrepresented his residence, National Grange could not have known, at that time, that Stulb did in fact make material misrepresentations such that the policy was void.

Furthermore, Stulb's demand for coverage under the 2002-2003 insurance policy did not occur until June 11, 2004, when Stulb's attorney sent a letter seeking to invoke National Grange's duty to defend Stulb.  Upon reviewing the police report forwarded by Stulb's attorney

-19-

in July 2004, National Grange was able to conclude that Stulb had made material

misrepresentations in his insurance application and, at that time, became aware that the 2002-

2003 policy was void under the terms of the Endorsement as well as Virginia statutory law.

Accordingly, National Grange timely rejected coverage in its letter dated August 27, 2004.

       In addition, National Grange's failure to refund the premiums Stulb paid in exchange for

the 2002-2003 policy does not constitute conduct warranting the application of the doctrines of

waiver or estoppel.  Vermont courts "are almost unanimous in holding that return of the unearned

premium is neither a condition precedent nor a condition subsequent to effective cancellation,

and that the insurer's obligation to return the premium is only a contractual duty arising in

consequence of the cancellation." *Green Mountain Ins. Co. v. Me. Bonding & Cas. Co.*, 608

A.2d 1160, 1165 (Vt. 1992).  The policy in dispute here does not make cancellation dependent

upon a refund of premiums.  It provides that "cancellation will be effective even if we have not

made or offered a refund."  (McDonagh Certif. Ex. G).  Thus, "[a]lthough a contractual

undertaking by an insurer or a Vermont statute could condition cancellation on its timely return

of unearned premiums, neither condition applies in this case[.]"  *Green Mountain Ins. Co.*, *supra*,

608 A.2d at 1166.

       Finally, Stulb did not suffer any prejudice from National Grange's conduct such that the

insurer is estopped from voiding the policy.  First, because National Grange was under no

obligation to return the premiums paid for a policy ultimately voided *ab initio* for the insured's

material misrepresentations, the Court finds no basis to conclude that Stulb relied to its detriment

on National Grange's failure to return any premiums.  That is, Stulb had no reason to expect a

refund of the premiums he paid.  Second, National Grange never assumed any control over

Stulb's defense in the underlying action brought by the Greenbergs.  At all times, Stulb has been represented by his own counsel.  Thus, Stulb's defense in the underlying state action is not prejudiced by a declaration that the insurance policy is void due to Stulb's material misrepresentations.  *Cf. Beatty v. Employers' Liab. Assur. Corp.*, 168 A. 919, 923 (Vt. 1933) ("Where a liability insurance company, with knowledge of the facts, and no effective reservation of its rights under its policy, takes charge of and defends an action against the insured, it is held to be estopped to deny its liability upon the ground that the risk was not covered.").  As a result, the Court finds that Stulb did not detrimentally rely on any actual or implied assertion that National Grange would not void the 2002-2003 policy despite Stulb's material misrepresentations.

Therefore, in respect of National Grange's motion for summary judgment, the Court concludes that no genuine issue of material fact exists.  The Court finds that the record clearly shows that Stulb made material misrepresentations in his application for automobile insurance, and that National Grange relied on those misrepresentations in deciding to insure Stulb's vehicle. Accordingly, pursuant to the terms of the policy in dispute as well Vermont statutory law, the 2002-2003 policy is void *ab initio*.  Moreover, the Court finds no basis to establish that the doctrines of waiver or estoppel preclude National Grange from voiding the policy.  The Court thus grants National Grange's motion for summary judgment.

### 3.     *One Beacon's Motion*

One Beacon, as the Greenbergs' insurer, also moves for summary judgment, seeking the Court to declare that National Grange is estopped from denying coverage to Stulb.  One Beacon contends that estoppel applies because National Grange was not prejudiced by Stulb's non-

cooperation in handling the claim for coverage of the 2002 accident.  Moreover, One Beacon

argues that National Grange took an unreasonable amount of time—eighteen months—to

investigate and disclaim coverage.  To calculate the eighteen-month delay, One Beacon submits

that National Grange had sufficient knowledge to disclaim coverage as early as October or

November of 2002, but waited until August 27, 2004 to disclaim coverage based on Stulb's

misrepresentations.  National Grange opposes One Beacon's motion, contending that One

Beacon lacks standing to assert an estoppel claim, as well as its counterclaims that allege that

National Grange "erroneously" disclaimed coverage to Stulb.

As noted above, the doctrine of "estoppel involves the act or conduct of both parties to

the contract" and requires a showing that "one has been misled to his prejudice or into an altered

position." *Liberty Mut. Ins.*, *supra*, 241 A.2d at 63.  "It is an essential element in estoppel that

the party claiming it was induced to act or refrain from acting by it and thus relying and induced

did take some action." *Farm Bureau Mut. Auto. Ins. Co. v. Houle*, 102 A.2d 326, 330 (Vt. 1954).

However, "[a]n estoppel can operate neither in favor of nor against strangers" to the contract of

insurance. *Ibid.  Accord Blake v. Nationwide Ins. Co.*, 904 A.2d 1071, 1077 n.4 (Vt. 2006).

Indeed, "[e]stoppels are and must be mutual and they operate only upon and in favor of the

parties and their privies." *Farm Bureau Mut. Auto. Ins. Co.*, *supra*, 102 A.2d at 330.

As pointed out by National Grange, One Beacon is not a party to the insurance policy at

issue here.  According to Vermont law, then, One Beacon may not assert the doctrine of estoppel

against National Grange.  Moreover, even if One Beacon could assert estoppel against National

Grange, estoppel would be inapplicable.

First, National Grange ultimately disclaimed coverage based on Stulb's material

misrepresentations, and not based on his non-cooperation.  Thus, One Beacon's argument that National Grange was not prejudiced by Stulb's failure to cooperate is of no moment.  Second, as found above, National Grange timely disclaimed coverage.  The record supports the finding that National Grange obtained sufficient information to determine that Stulb made material misrepresentations as to his residence and place of garaging the insured vehicle when it received from Stulb's attorney the police report of the car accident—which stated that Stulb resided in New Jersey, and had a New Jersey driver's license.  Thereafter, National Grange timely disclaimed coverage within approximately one month of receiving the police report, and within approximately eleven weeks of Stulb's demand for coverage.

Accordingly, the Court finds that, as a matter of law, One Beacon cannot assert a claim of estoppel in its favor and against National Grange because One Beacon is not a party to the insurance contract in dispute.  The Court, thus, denies One Beacon's motion for summary judgment.

### 4. *One Beacon's Counterclaims*

Finally, because the Court holds that National Grange properly disclaimed coverage for the underlying state civil action brought by the Greenbergs and that the automobile policy in dispute is void as a matter of law, the Court dismisses One Beacon's counterclaims asserted against National Grange, in which One Beacon alleges that National Grange erroneously disclaimed coverage.  Notably, both counterclaims asserted by One Beacon are brought against National Grange.  In Counterclaim One, One Beacon seeks a declaration that National Grange is obligated to provide full coverage to Stulb.  In respect of Counterclaim Two, One Beacon asserts, against National Grange, a claim that National Grange's "erroneous disclaimer of coverage"

-23-

triggered the Greenbergs' "claim for uninsured motorist benefits against" One Beacon.  Relying

on a finding that National Grange improperly disclaimed coverage to Stulb, One Beacon seeks a

declaration that the Greenbergs "are not entitled to uninsured motorist benefits pursuant to the

policy issued by One Beacon[.]"

For the reasons that the Court grants National Grange's motion for summary judgment

and denies One Beacon's motion for summary judgment, the Court dismisses Counterclaim One

with prejudice.  Indeed, National Grange is not obligated to provide Stulb coverage under the

insurance contract.  In respect of Counterclaim Two, to the extent One Beacon alleges that

National Grange "erroneously" denied coverage to Stulb, the Court also dismisses that

Counterclaim with prejudice.  Furthermore, the Court finds that, to the extent One Beacon seeks

a declaration regarding its obligations under the insurance policy it issued to the Greenbergs, the

Court finds that the Greenbergs' insurance policy is not properly before the Court and refrains

from expressing a judgment as to the scope of One Beacon's obligations.  Accordingly, the Court

dismisses without prejudice One Beacon's second counterclaim seeking a declaration of its

obligations under the insurance policy issued to the Greenbergs.[3]

## III.    CONCLUSION

---

[3]  The Court recognizes that One Beacon pleads that a condition precedent to the triggering of its insurance contract with the Greenbergs is a finding that Stulb is not covered under the National Grange policy.  Based on the motions presently made and the record provided, the Court is able to conclude that the condition precedent required to trigger One Beacon's obligations under its policy with the Greenbergs exists.  However, the Court refrains from expressing an opinion as to any other aspect of the insurance policy between One Beacon and the Greenbergs.  The Court further notes that, based on its holding that National Grange's policy with Stulb is void *ab initio*, National Grange is not a party with an interest as to the issue of whether the Greenbergs are entitled to uninsured motorist insurance coverage pursuant to its contract with One Beacon.  Thus, to the extent One Beacon seeks a declaration of its obligations under its policy issued to the Greenbergs, National Grange is not a proper defendant.

For the reasons set forth above, the Court grants National Grange's motion for summary judgment.  Accordingly, the Court holds that the commercial automobile policy, policy number B1K37367, issued by National Grange to Stulb for the policy period of May 29, 2002 to May 29, 2003 is void *ab initio* due to material misrepresentations made in Stulb's application for insurance.  In addition, the Court denies One Beacon's motion for summary judgment and dismisses its counterclaims seeking a declaration that National Grange must provide full coverage to Stulb under the 2002-2003 insurance policy and that National Grange improperly disclaimed coverage for the underlying state civil action brought by the Greenbergs.  An appropriate order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated:  May 8, 2008